**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| APPLIED MEDICAL DISTRIBUTION CORPORATION, <br><br> *Plaintiff,* <br><br> v. <br><br> STEWARD HEALTH CARE SYSTEM LLC, <br><br> *Defendant*. | Civil Action No. _____ |

**COMPLAINT FOR BREACH OF CONTRACT, FRAUD,**
**AND UNJUST ENRICHMENT**

Plaintiff Applied Medical Distribution Corporation ("Applied Medical"), based upon personal knowledge as to all acts or events that it has undertaken or witnessed, and upon information and belief as to all others, hereby alleges the following against Defendant, Steward Health Care System, LLC, ("Steward"):

**INTRODUCTION**

1.      This is an action brought to enforce the plain terms of three medical device supply contracts and to redress acts of fraud and unfair business practices.

2.      Plaintiff Applied Medical is a marketer and distributor of medical devices, including minimally invasive surgical devices that are manufactured by its parent company. Building on its decades-long reputation, Applied Medical has invested substantially in the research and development of innovative products for the surgical device industry. Applied Medical

dedicates its business to providing high-quality surgical devices that it sells at reasonable prices to group purchasing organizations ("GPOs")[1], hospitals, and individual surgeons worldwide.

3.      Steward is the largest physician-owned private for-profit health care network in the United States.

4.      Applied Medical and Steward entered three contracts, pursuant to which Steward procured at least $5,278,000 of medical devices from Applied Medical over the past three years. Steward has now accrued an unpaid balance of $577,630 that it refuses to pay in breach of its obligations to Applied Medical.

5.      Steward has repeatedly acknowledged that it has defaulted on its payment obligations to Applied Medical. Steward has also repeatedly promised to pay the outstanding balances owed to Applied Medical, thereby inducing Applied Medical to continue sending products to Steward notwithstanding Steward's unpaid balance. After receiving Applied Medical's products, however, Steward still refused to pay its invoices.

6.      On one occasion, Steward even proposed that, if Applied Medical agreed to write off $170,000 from the invoices that remained unpaid, then Steward would wire $230,000 to Applied Medical as partial payment for the remaining past due invoices. Applied Medical declined this offer. Later, Steward said that "if Applied [Medical] will make us a deal" by writing off a large portion of Steward's unpaid balance, then Steward would "work [Applied Medical] to the head of the line" of Steward's creditors. Applied Medical declined this offer as well.

7.      Steward has continued to string Applied Medical along with further promises of payment on its $577,630 unpaid balance to induce Applied Medical to continuing shipping products. Recently, Applied Medical ceased shipping further products to Steward in light of

---

[1] GPOs are groups of health care providers that combine to leverage their collective purchasing power to negotiate favorable contract terms.

Steward's refusal to pay for product. Applied Medical has not received any further payments from Steward as a result.

8. Applied Medical attempted numerous times in good faith to address Steward's refusal to comply with its contractual obligations. Applied Medical now files this action to recover what it is undisputedly owed and to otherwise address Steward's related fraudulent and unfair conduct.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Personal jurisdiction and venue are proper in this district because the principal contract at issue in this dispute contains a forum selection clause through which Steward consented to venue in this district and this Court's jurisdiction. Furthermore, Steward is headquartered in this district and has intentionally and repeatedly transacted business in this district that goes to the heart of the matters at issue in this lawsuit. Steward's executives and employees are located in this district, including individuals whose actions are at issue in this Complaint. Steward's officers, employees, and agents placed orders with Applied Medical, received delivery of Applied Medical's products, and communicated with Applied Medical regarding the unpaid balances in this district. Thus, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to, and at issue in, this lawsuit occurred in this district.

## PARTIES

11. Applied Medical is organized under the laws of the State of California with its principal place of business at 22872 Avenida Empresa, Rancho Santa Margarita, California 92688.

12.     Steward is organized under the laws of the State of Delaware with its principal place of business at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

## FACTUAL ALLEGATIONS

**I.      Formation of the Parties' Contractual Relationship**

     **A.      The Product Purchasing Agreement**

13.     HealthTrust Purchasing Group, L.P. ("HealthTrust") is a GPO that enters into "Participation Agreements" with certain health care providers, whereby the providers may choose to become "Participants" with respect to HealthTrust's products purchasing contracts with medical device companies, such as Applied Medical.

14.     On or about February 26, 2019, Applied Medical executed the Products Purchasing Agreement ("Purchasing Agreement") with HealthTrust. Under the terms of the Purchasing Agreement, Applied Medical agreed to supply certain medical devices at a discounted rate to HealthTrust's GPO members that chose to become "Participants" of the Purchasing Agreement. Such "Participants" would be benefitted and bound to the terms of the Purchasing Agreement.

15.     On information and belief, at some point prior to February 2019, Steward executed a Participation Agreement with HealthTrust. On or about April 22, 2019, Steward executed and submitted to Applied Medical an electronic letter of commitment further confirming Steward's participation in the Participation Agreement with HealthTrust. By entering the Participation Agreement, Steward opted into the terms of the Purchasing Agreement, thereby allowing Steward to procure certain medical devices from Applied Medical at a discounted rate and subject to the terms and conditions of the Purchasing Agreement.

16.     The Purchasing Agreement requires Steward to place product orders directly with Applied Medical. *See* Purchasing Agreement, Exhibit B ¶ 10.

10. Ordering Point:
Purchasers may place orders directly from Vendor and/or from Distributors as checked below:
☒ Vendor Direct only
☐ Distributor only
☐ Either Vendor Direct or Distributor

17.     The Purchasing Agreement also obligates Steward to make payment on the products that it obtains from Applied Medical within 30 days from (1) the receipt of an invoice from Applied Medical, or (2) receipt of products from Applied Medical, whichever comes later. *See* Purchasing Agreement, Exhibit B ¶ 16.

Purchasing Invoice: Net due thirty (30) days from the latter of receipt of invoice or receipt of Product.

18.     Paragraph 19.6.2 of the Purchasing Agreement states that "any claim, controversy or dispute arising under or related to this Agreement shall be governed by and construed in accordance with the laws of the state in which [Steward] is located, without regard to its principles of conflict of laws." Steward is located and headquartered in Dallas, Texas.

**B.     Applied Medical's Product Catalog and Terms and Conditions**

19.     Each year, Applied Medical publishes the Applied Medical Product Catalog ("Product Catalog"), which summarizes all of Applied Medical's product offerings and standard pricing. The Product Catalog includes certain "Terms and Conditions" pursuant to which health care providers can procure medical devices directly from Applied Medical.

20.     On information and belief, because the Product Catalog contains Applied Medical's full product offering and competitive pricing, health care providers order medical devices through the Product Catalog rather than through other available contracts or channels. Health care providers may submit these orders—subject to the Product Catalog's embedded terms and

conditions—directly to Applied Medical's Customer Relations Team through email, telephone, or fax.

21.     Under the Product Catalog's terms and conditions, payment on products that a customer procures through the Product Catalog is due within 30 days from the receipt of an invoice from Applied Medical. The Product Catalog's terms and conditions also provide that a 2% per month finance charge may be charged for payments not received within the 30-day period, and all applicable taxes will be charged. Product Catalog, Terms and Conditions ¶ 1.

> **TERMS AND CONDITIONS**
> 1.   Payment: Net 30 days from invoice date. A 2% per month finance charge may be charged for payments not received within the 30-day period. In the case of customers who have invoices outstanding, Applied may assign a "hold" status and may allow shipments on a prepaid basis only.

### C.     Steward's Master Pricing Agreement

22.     Applied Medical entered into the Master Pricing Agreement with Steward on January 24, 2019. Under the terms of the Master Pricing Agreement, Applied Medical agreed to supply certain medical devices at a discounted rate to Steward.

23.     The Master Pricing Agreement obligates Steward to make payment on the products that it obtains from Applied Medical within 60 days from the invoice date. *See* Master Pricing Agreement ¶ 2.

> **2.  PAYMENT & Shipping**
> Payment will be sixty (60) days from invoice date.
>
> Shipping terms will be FOB Destination.

.

## II.     Steward Orders and Receives Medical Devices from Applied Medical

24.     Steward and its related hospital facilities have placed multiple orders for medical devices from Applied Medical under the Purchasing Agreement, Product Catalog, and Master Pricing Agreement, totaling at least $5,278,000 of products over the past three years.

25.     Per the terms of the Purchasing Agreement, Product Catalog, and Master Pricing Agreement, Applied Medical filled Steward's orders and performed all of Applied Medical's obligations that are conditions precedent to Steward's payment for the medical devices under each of the three contracts.

26.     Applied Medical sent (and resent) numerous invoices to Steward for the products that were shipped and delivered to Steward. Steward's own Purchase Orders clearly state "Net30" payment terms, reiterating that Steward was fully aware of the payment terms when placing orders. Steward has failed to pay for a significant amount of the products that it received from Applied Medical under the terms of the Purchasing Agreement, Product Catalog, and Master Pricing Agreement, even though Steward (1) received invoices from Applied Medical, and (2) received the ordered products from Applied Medical a long time ago.

**III.     Steward Breaches the Contracts with Applied Medical**

27.     Until about July 2022, Steward paid for substantially all of the medical devices that it ordered from Applied Medical. But beginning on August 1, 2022, Steward began amassing significant unpaid balances on its account with Applied Medical.

28.     Steward failed to pay for a significant portion of medical devices that it obtained from Applied Medical pursuant to the Purchasing Agreement from May 2022 through May 2023.

29.     Steward failed to pay for a significant portion of medical devices that it obtained from Applied Medical pursuant to the Product Catalog from May 2022 through May 2023.

30.     Steward failed to pay for a significant portion of medical devices that it obtained from Applied Medical pursuant to the Master Pricing Agreement from May 2022 through April 2023.

31.     As of June 6, 2023, Steward owes Applied Medical $577,630, inclusive of tax charges, for products that have been invoiced and delivered to Steward. This balance is overdue by more than 30 days and a significant portion of it is overdue by more than 120 days.

**IV.     Steward Induces Applied Medical to Send Further Products By Falsely Promising to Pay Its Account Balance**

32.     Following Steward's initial breaches of the Purchasing Agreement, Product Catalog, and Master Pricing Agreement by failing to pay for products that had been timely invoiced and delivered to Steward, Applied Medical made requests for payment on the unpaid balances.

33.     Steward acknowledged its default on its contractual obligations and, on January 24, 2023, through its Senior Vice President of Supply Chain, Michael Prokopis, proposed a voluntary minimum payment plan whereby Steward would pay Applied Medical $50,000 per week until Steward's account was current on the balances owed under each of the three contracts.

34.     Mr. Prokopis also explained that Steward intended to use some of the proceeds from the upcoming $685 million sale of Steward's assets in Utah—consisting of five hospitals, over 35 medical group clinics, imaging and urgent care centers, and other outpatient ventures—to pay off its account balances with Applied Medical.

35.     Applied Medical reasonably relied on Steward's prior payment history and the representations from Mr. Prokopis and thus continued to ship products to Steward.

36.     On information and belief, Steward completed the sale of its Utah health care assets on May 1, 2023. Despite Mr. Prokopis's promises to pay $50,000 *weekly* to Applied Medical in anticipation of (or from) the proceeds of that sale, Steward paid only $52,708.71 in *total* between January 1, 2023, and March 15, 2023. Further, Steward ceased weekly payments to Applied Medical after April 24, 2023.

37.     On May 5, 2023, after further requests for payment from Applied Medical, Mr. Prokopis suggested a "quid pro quo" arrangement whereby Applied Medical would write off $170,000 of Steward's unpaid balance by designating those products as "missing/unapproved" and, in return, Steward would immediately wire $230,000 to Applied Medical as partial payment on the remaining past due invoices. When Applied Medical rejected this proposal, Mr. Prokopis responded: "Well then you'll continue to stand inline [sic]."

38.     On May 8, 2023, Mr. Prokopis contacted Applied Medical and stated: "After the Utah close, I have funds available to pay down our AR. The first one's [sic] we are addressing are vendors who will work with us especially given the age of some of the oldest invoices. . . . Even if you send us invoices, it'll take months to resolve the outstanding given the issues in our AP and the hill to pay off the AR. If Applied will make us a deal, I can work you to the head of the line." When Applied Medical rejected this second "quid pro quo" arrangement, Mr. Prokopis responded: "Given your inflexibility, I will source products elsewhere."

39.     On June 15, 2023, Mr. Prokopis communicated again with Applied Medical and promised to make full payment of Steward's outstanding $577,630 balance by the end of that week. Mr. Prokopis represented that he would send remittance details shortly.

40.     On June 16, 2023, Mr. Prokopis retracted his promise and falsely claimed that there were $198,000 in "missing" invoices, but he still promised to make a partial payment to Applied Medical of $353,000. But Steward did not make this promised payment either.

41.     On June 21, 2023, Mr. Prokopis confirmed that Steward had not sent any payment to Applied Medical to cover its outstanding balance. Steward has made no further payments on the amounts that it owes to Applied Medical.

42.     Throughout this period, Applied Medical reasonably relied on Steward's representations that it would make full or partial payment to Applied Medical and thus, continued to ship products to Steward. On June 26, 2023, however, Applied Medical told Steward that, due to Steward's recurring patterns of broken promises and lack of follow-through on commitments that it made, Applied Medical would not ship any further products to Steward until it received payment in full on Steward's delinquent account balance.

43.     As of July 6, 2023, Steward has not made any further payments on its account with Applied Medical. As a result of Steward's failure to pay for past due invoices, Applied Medical has been deprived of $577,630 and suffered other financial damage.

## FIRST CAUSE OF ACTION

## (BREACH OF CONTRACT – PURCHASING AGREEMENT)

44.     Paragraphs 1 through 43 are re-alleged and incorporated by reference as if fully set forth herein.

45.     Applied Medical entered into a valid contract, the Purchasing Agreement, with HealthTrust, pursuant to which HealthTrust's GPO members could opt into the Purchasing Agreement by agreeing to become "Participants" to the Purchasing Agreement.

46.     Steward entered into a valid contract, the Participation Agreement, with HealthTrust. Pursuant to the Participation Agreement, Steward agreed to be a "Participant" to the Purchasing Agreement and to enjoy the benefits and be bound by the terms of the Purchasing Agreement with Applied Medical.

47.     Steward promised that it would order medical devices directly from Applied Medical. Steward also promised that it would pay Applied Medical for all products that it ordered within thirty days from the later of (1) receipt of an invoice, or (2) receipt of the products from Applied Medical.

48.     Steward agreed to the terms of the Purchasing Agreement in exchange for good and valuable consideration.

49.     Steward submitted and Applied Medical fulfilled numerous orders for medical devices pursuant to the Purchasing Agreement. Applied Medical also performed all of the obligations it owed to Steward under the Purchasing Agreement, including timely sending invoices and shipping conforming products to Steward, which invoices and products Steward received and accepted.

50.     Steward breached its contractual obligations to Applied Medical under the Purchasing Agreement by failing to pay for the products that it received from Applied Medical.

51.     Steward's breach of the Purchasing Agreement has caused serious harm and damage to Applied Medical of at least $215,852, in addition to an amount that is not presently ascertainable but will be established at trial.

52.     Because Applied Medical asserts this claim against Steward under a written contract, Applied Medical is entitled to recover its reasonable attorneys' fees, costs, and expenses from Steward. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8).

<h3 align="center">SECOND CAUSE OF ACTION</h3>

<h3 align="center">(BREACH OF CONTRACT – PRODUCT CATALOG)</h3>

53.     Paragraphs 1 through 43 are re-alleged and incorporated by reference as if fully set forth herein.

54.     Applied Medical entered into a valid contract with Steward, the Product Catalog with its separate terms and conditions, when Steward submitted orders to procure medical devices pursuant to the pricing and terms and conditions of the Product Catalog.

55.     Steward also agreed to the terms and conditions embedded in the Product Catalog that provided that Steward would pay Applied Medical for all products that it ordered within 30

days from the receipt of an invoice from Applied Medical. Steward also agreed that a 2% per month finance charge may be charged for payments not received within the 30-day period, and all applicable taxes will be charged.

56.     Steward agreed to the terms of the Product Catalog and its embedded terms and conditions for good and valuable consideration.

57.     Steward submitted and Applied Medical fulfilled numerous orders for medical devices pursuant to the Product Catalog. Applied Medical also performed all of the obligations it owed to Steward under the Product Catalog, including timely sending invoices and shipping conforming products to Steward, which invoices and products Steward received and accepted.

58.     Steward breached its contractual obligations to Applied Medical under the Product Catalog by failing to pay for the products that it received from Applied Medical.

59.     Steward's breach of the Product Catalog has caused serious harm and damage to Applied Medical of at least $244,295, in addition to an amount that is not presently ascertainable but will be established at trial.

60.     Because Applied Medical asserts this claim against Steward under a written contract, Applied Medical is entitled to recover its reasonable attorneys' fees, costs, and expenses from Steward. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8).

**THIRD CAUSE OF ACTION**

**(BREACH OF CONTRACT – MASTER PRICING AGREEMENT)**

61.     Paragraphs 1 through 43 are re-alleged and incorporated by reference as if fully set forth herein.

62.     Applied Medical entered into a valid contract, the Master Pricing Agreement, with Steward. As part of that agreement, Steward promised that it would pay Applied Medical for all products that it ordered within 60 days from the invoice date.

63.     Steward agreed to the terms of the Master Pricing Agreement for good and valuable consideration.

64.     Steward submitted and Applied Medical fulfilled numerous orders for medical devices pursuant to the Master Pricing Agreement. Applied Medical also performed all of the obligations it owed to Steward under the Master Pricing Agreement, including timely sending invoices and shipping conforming products to Steward, which invoices and products Steward received and accepted.

65.     Steward breached its contractual obligations to Applied Medical under the Master Pricing Agreement by failing to pay for the products that it received from Applied Medical.

66.     Steward's breach of the Master Pricing Agreement has caused serious harm and damage to Applied Medical of at least $117,483, in addition to an amount that is not presently ascertainable but will be established at trial.

67.     Because Applied Medical asserts this claim against Steward under a written contract, Applied Medical is entitled to recover its reasonable attorneys' fees, costs, and expenses from Steward. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8).

## FOURTH CAUSE OF ACTION

### (FRAUDULENT INDUCEMENT)

68.     Paragraphs 1 through 43 are re-alleged and incorporated by reference as if fully set forth herein.

69.     Steward made at least three misrepresentations to Applied Medical on June 15, 2023, June 20, 2023, and June 21, 2023 that it would pay all or part of its $577,630 balance owed to Applied Medical.

70.     On information and belief, Steward knew and intended at the time that it made these promises that it would not fulfill it promises to Applied Medical. After Steward sold assets for

$685 million on or around May 1, 2023, Steward represented that it would make full or partial payment to Applied Medical on the unpaid invoices but never followed through on any of those promises. Steward even attempted to take advantage of Applied Medical by offering on May 5, 2023 to make a partial payment of $230,000 if Applied Medical agreed to write off $170,000 of unpaid invoices. Steward again attempted to take advantage of Applied Medical by offering to move Applied Medical "to the head of the line" (*i.e.*, of Steward's creditors) if Applied Medical would agree to "make [Steward] a deal."

71.     On information and belief, Steward made these misrepresentations to Applied Medical to induce Applied Medical to continue shipping products to Steward and to forestall legal action by Applied Medical against Steward, notwithstanding the significant unpaid balances and Steward's undisputed obligation to pay Applied Medical.

72.     Applied Medical reasonably relied on the parties' prior business dealings and Steward's specific representations about its intention and ability to make full or partial payment to Applied Medical. In reasonable reliance on these representations, Applied Medical continued shipping products to Steward until June 26, 2023.

73.     As a result of Applied Medical's reliance on Steward's misrepresentations, Applied Medical accepted orders and sent invoices and products to Steward, $577,630 of which has remained unpaid.

74.     Steward's callous and fraudulent conduct, in light of its obvious ability to pay $577,630 to Applied Medical—an amount equal to less than one tenth of a percent of the $685 million proceeds that Steward recently received from the sale of certain assets in Utah, to say nothing of Steward's other revenues and potential sources of payment—warrants the imposition of exemplary damages.

**FIFTH CAUSE OF ACTION**

**(UNJUST ENRICHMENT)**

75.     Paragraphs 1 through 43 are re-alleged and incorporated by reference as if fully set forth herein.

76.     Between July 2022 and May 2023, Applied Medical supplied $1,742,157 in medical devices, excluding applicable taxes, to Steward.

77.     Steward told Applied Medical, and Applied Medical reasonably believed, that Steward would pay Applied Medical for the products that Applied Medical delivered to Steward.

78.     After accepting Applied Medical's products, Steward refused to pay for $577,630 worth of medical device products, inclusive of tax charges, that it received from Applied Medical.

79.     Steward has been unjustly enriched through its wrongful conduct against Applied Medical.

80.     Applied Medical is entitled to full restitution of the value of the products delivered to Steward in the amount of $577,630.

**PRAYER FOR RELIEF**

WHEREFORE, the Applied Medical respectfully requests that this Honorable Court enter judgment in its favor and order the following relief:

a.     Compensatory damages of at least $577,630, or an amount to be determined at trial;

b.     Prejudgment interest;

c.     Punitive and other exemplary damages as the Court deems just and proper;

d.     Applied Medical's reasonable attorneys' fees, costs, and expenses; and

e.     Such other and further relief as the Court may deem just and proper.

Dated: July 6, 2023                          Respectfully submitted,


                                              */s/ Jonathan D. Guynn*

                                             Jonathan D. Guynn
                                             Texas State Bar No. 24120232
                                             JONES DAY
                                             2727 North Harwood Street
                                             Dallas, TX  75201.1515
                                             Telephone: (214) 220-3939
                                             Facsimile: (214) 969-5100
                                             E-mail: jguynn@jonesday.com

                                             Attorneys for Plaintiff Applied Medical
                                             Distribution Corporation